**TURNPIKE MANAGEMENT CORP.,**
**et al., Appellants,**

v.

**Jose R. THOMAS–RICHARDS,**
**M.D., Respondent.**

**No. WD 42753.**

Missouri Court of Appeals,
Western District.

Dec. 18, 1990.

Rehearing Denied Jan. 29, 1991.

Marie L. Gockel, Lori A. Gregory, Kansas City, for Turnpike Management.

Taylor Fields, David B. Anderson, Kansas City, for Jose R. Thomas–Richards, M.D.

Before GAITAN, P.J., and TURNAGE and KENNEDY, JJ.

KENNEDY, Judge.

Defendant tenant appeals from a judgment awarding to the landlord $3,500 rent-

---

al owing to landlord under the terms of a lease, $5,000 attorney's fees, and prejudgment interest at the rate of 1.5 percent per month.

Plaintiff landlord also appeals, contending the trial court should have awarded it $10,842, including unpaid rent and prejudgment interest, instead of $3,500.

The lease in question was for medical offices consisting of 2,928 square feet in a building located at 3101 Broadway in Kansas City, Missouri, for a 10–year term beginning February 1, 1986. In addition to a basic or minimum rental to be paid by the tenant, tenant was also to pay a prorated share of the variable operating costs of operation of the building. Those costs included utilities, cleaning and management.

■ Tenant does not dispute that by the terms of the lease he owed rental in some amount, except for the landlord's failure to provide him with a "proper" operating statement. Nor does he dispute the amount calculated by the court to be $3,500. His argument on appeal is rather that the landlord "violated the terms of the lease in that (landlord) failed to provide (tenant) with a proper landlord's operating statement." This alleged default on the part of the landlord, tenant argues, excuses him from paying any of the variable operating costs called for by the lease.

The lease provided that at the end of each year of the lease the landlord would prepare a statement showing such operating costs and tenant's share prorated share thereof, and that tenant should pay his share of the additional operating costs within 10 days after receipt of the statement. For each year of the lease after the first, the operating costs would be assumed to be the same as the preceding year, and tenant was obligated by the lease to pay ¹⁄₁₂th of such amount month by month during the current year, for which he would receive credit upon his share of the operating costs when the actual operating costs for that year were calculated at the end of the year.

The amount of tenant's variable operating costs obligation for the year 1986 was correctly determined by the landlord's April 9, 1987, statement to be $4,965.40, for 11 months' occupancy. Judgment should have gone for the landlord for such amount, along with prejudgment interest at the rate of 1.5 percent per month (the rate provided by the lease itself) from and after April 19, 1987, the date the additional rent was due by the terms of the lease.

Tenant was unable to show the court wherein the landlord's statement of operating costs for 1986 was in error, or wherein the formula used by the landlord in computing that part of the costs chargeable to the tenant was not in compliance with the lease. Tenant points to the use of the word "estimate" and "estimated" which landlord used in a detailed explanation furnished to tenant at tenant's request after tenant had received landlord's first, less detailed, statement of operating costs for the year 1986. Tenant says his additional rent was to be based upon actual costs, not estimated costs. It appears, however, that the words "estimate" and "estimated" were used in the statement with reference to projected 1987 costs, which, according to the lease, were to be based upon actual 1986 costs. The amount of the estimated costs for 1987 determined the amount which tenant was to pay monthly during 1987. This, of course, could only be an estimate, to be adjusted when the actual costs were determined at the end of the year.

The April 9, 1987, statement also included a claim for the first four monthly payments of $451.40 each (total, $1,805.60) on the estimated 1987 variable operating costs. Judgment should be entered therefor with prejudgment interest at 1.5 percent per month from and after April 19, 1987.

The statement for 1987 additional rental was sent to the tenant under date of March 14, 1988. It showed a balance of $808.13 owing for additional 1987 operating costs (after credit for $1,805.60 for "prior monthly billings"). Included with the statement for 1987 was a statement for $1,556.22 additional rental on estimated variable operating costs for 1988, against which tenant was given credit for $1,354.20 already

paid (three months' installments at $451.40 per month), leaving a balance owing on 1988 estimate of $202.02. The total of $1,010.15 became due March 24, 1988, and landlord should have judgment against tenant for that amount, plus prejudgment interest of 1.5 percent per month from and after that date.

Tenant appeals from the trial court's award to landlord of $5,000 in attorney's fees. In its petition, landlord alleged an entitlement to $2,000 in attorney's fees. Tenant argues that landlord is bound by the amount prayed for, $2,000, and the trial court exceeded the scope of the pleadings in awarding the $5,000 fee. Tenant's argument, however, ignores Rule 55.33(b) of the Missouri Rules of Civil Procedure, which provides that "[w]hen issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated as if they had been raised in the pleadings." In *Central Production Credit Assoc. v. Pennewell*, 776 S.W.2d 21 (Mo. App.1989), the court upheld the trial court's award of damages for an amount that exceeded the amount prayed for: "Admittedly, the $68,915.83 principal award exceeds the plea, but the issue of principal in that amount was tried by implied consent and we treat it as if it had been raised in the pleadings. Rule 55.33(b)." *Id.* at 24.

The precise issue at bar, involving an attorney fee award which exceeds the amount prayed for, was encountered in *Kizziar v. Dollar*, 268 F.2d 914 (10th Cir. 1959), *cert. denied*, 361 U.S. 914, 80 S.Ct. 258, 4 L.Ed.2d 184 (1959). In that case, the court awarded an attorney's fee of $2,500, despite the fact that the amount prayed for was only $2,000. In awarding the higher fee, the court stated: "The plaintiff would not be bound by the $2,000 allegation, and if the evidence was sufficient to sustain a higher award, the complaint would be considered amended to conform to the proof." [1] *Id.* at 918. Similarly, in the instant case evidence was submitted showing that the attorney fee exceeded the $2,000

amount prayed for. One of landlord's attorneys testified that the total fee, including the time expended at trial, was as high as $6,390. This evidence was not objected to by tenant on the theory that it was not within the issues framed by the pleadings. Tenant's failure to object resulted in an automatic amendment of the pleadings to conform to the evidence, and, in the language of Rule 55.33(b), the issue was "tried by express or implied consent of the parties." Although it is not clear exactly how the trial court settled on $5,000 as the appropriate fee, the trial court is granted a wide discretion in the award of attorney's fees. *Granat v. Scott*, 766 S.W.2d 748, 749 (Mo.App.1989). The trial court is guilty of no abuse of discretion in determining the attorney fee issue as he did.

Judgment reversed and cause remanded for entry of new judgment in accordance with this opinion.

---

1. This determination was based on Rule 15(b) of the Federal Rules of Civil Procedure. Missouri Rule 55.33(b) was borrowed from its federal counterpart and is a verbatim copy of Federal Rule 15(b).